UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOUGLAS JEFFREY DALE,<br><br>                    Plaintiff,<br><br>         v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>                    Defendant. | Case No. C14-1936-BJR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Douglas Jeffrey Dale seeks review of the denial of his Supplemental Security Income applications.[1] He contends the ALJ erred by rejecting the opinions of his examining doctors, failing to find he had a severe impairment of Personality Disorder at step two, and failing to order a consultative examination. Dkt. 12. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

---

[1] Mr. Dale originally applied for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Tr. 18; Dkt. 12 at 2. The ALJ's decision noted that, during the hearing, Mr. Dale's representative conceded that no records dated back to Mr. Dale's date last insured. Tr. 19; *see also* Tr. 38. On this basis, the ALJ concluded "no medically determinable impairment has been found for the Title II purposes and the evaluation pertains only to the Title XVI application." Tr. 19. Mr. Dale does not challenge – and thus concedes – this finding.

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

Mr. Dale is currently 54 years old, has at least a high school education, and has no past relevant work. Tr. 28, 40, 60. On April 17, 2012, he applied for benefits, alleging disability as of February 1, 1994. Tr. 18. His applications were denied initially and on reconsideration. *Id*. The ALJ conducted a hearing on April 22, 2013, finding Mr. Dale not disabled. Tr. 29.

Utilizing the five-step disability evaluation process,[2] the ALJ found Mr. Dale met the insured status requirements through June 30, 1999; had not engaged in substantial gainful activity after his alleged onset date; and that he has severe impairments of major depressive disorder and general anxiety disorder. Tr. 21. The ALJ further found Mr. Dale has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can understand, remember, and carry out simple tasks; he can make simple work-related decisions; he cannot have public contact; and he must work in a predictable, stable workplace setting. Tr. 23. The ALJ found Mr. Dale can perform jobs[3] that exist in significant numbers in the national economy. Tr. 28. As the Appeals Council denied Mr. Dale's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-3.

**DISCUSSION**

**A.    The ALJ Erred in Evaluating the Medical Opinion Evidence**

Mr. Dale argues the ALJ failed to provide specific and legitimate reasons based on substantial evidence in the record for discounting the opinions of examining doctors Carla Hellekson, M.D., Gerald Cavenee, Ph.D., and Phyllis Sanchez, Ph.D. Dkt. 12 at 7; *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Court agrees.

   **1.    *Carla Hellekson, M.D.***

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] Landscape laborer, building maintenance laborer, and hand packager.

Mr. Dale challenges the ALJ's rejection of an August 2010 psychological/psychiatric evaluation by Dr. Hellekson. Dkt. 12 at 8. The ALJ assigned "little weight" to Dr. Hellekson's evaluation because she concluded the doctor did not review any medical records, she relied on Mr. Dale's self-reports, and she assessed no functional limitations. Tr. 25. Though it is true Dr. Hellekson stated there were no medical records available for review, Tr. 228, the ALJ failed to provide any basis, supported by the record, for concluding the doctor disregarded her own observations and relied exclusively on Mr. Dale's subjective reporting. The evaluation form directs the doctor to base findings on personal observations, and to indicate whether symptoms were observed. *See* Tr. 229, 231. This is what Dr. Hellekson did. But this does not mean a doctor may not also rely on a claimant's subjective reports. An ALJ does not provide valid reasons for rejecting an examining physician's opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports [her] ultimate opinion with [her] own observations." *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

As Mr. Dale properly notes, there is also no factual basis for the ALJ's finding that no functional limitations were assessed. *See* Dkt. 12 at 9. The doctor opined Mr. Dale's depressed mood and difficulty getting along with others would have severe impacts on his ability to perform basic work activities, and his social anxiety and resentment would moderately interfere with his work activities. Tr. 229. Additionally, the doctor opined Mr. Dale had severe limitations in his ability to exercise judgment and make decisions, and moderate limitations in a number of cognitive and social areas, including his ability to learn new tasks, perform routine tasks, and relate appropriately to co-workers and supervisors. Tr. 231. Accordingly, the ALJ erred with respect to Dr. Hellekson's opinion.

### 2. *Gerald Cavenee, Ph.D.*

Mr. Dale also challenges the ALJ's treatment of the December 2011 opinion of Dr. Cavenee. Dkt. 12 at 10. The ALJ "weighed heavily" Dr. Cavenee's cognitive mental status examination score, which showed no impairment. Tr. 26; *see also* Tr. 236-37, 239. However, the ALJ rejected the remainder of the opinion because Dr. Cavenee "did not provide functional limitations" and "his comment of a poor diagnosis for returning to work [was] subjectively based." Tr. 26.

The ALJ did not err in finding Mr. Dale's test results indicated no cognitive impairments, however, the finding is of no significance because Mr. Dale does not allege cognitive impairments. More importantly, Dr. Cavenee noted he observed Mr. Dale's depression and anxiety, and that these symptoms were confirmed by results of a Beck Depression and Beck Anxiety Inventory test. Tr. 234-36, 242-47. The objective tests indicated Mr. Dale suffered from severe depression and moderate to marked anxiety, based on evidence of Mr. Dale's sense of hopelessness, failure, guilty feelings, loss of interest in people and things, feelings of worthlessness, low energy, inability to relax, fear of the worst happening, fear of losing control, indigestion, and sweating, among others. *Id.* Based on these test results, the doctor opined Mr. Dale's depression and anxiety would affect his ability to perform work, but that Mr. Dale could still manage most of his activities of daily living and he could use public transportation. Tr. 235-36. The doctor found no evidence of malingering. Tr. 236.

The Court thus agrees with Mr. Dale that the ALJ failed to provide valid reasons based on substantial evidence in the record for rejecting Dr. Cavenee's opinions.

### 3. *Phyllis Sanchez, Ph.D.*

The ALJ also rejected the April 2012 opinion of Dr. Sanchez because Mr. Dale

REPORT AND RECOMMENDATION - 4

performed "extremely well" on the mental status examination "consistent with Dr. Cavenee's examination," the doctor did not report functional limitations, and the doctor failed to explain her findings and instead relied on Mr. Dale's self-reports. Tr. 26. Again, substantial evidence does not support the ALJ's finding regarding Mr. Dale's mental status examination. Here, Dr. Sanchez noted Mr. Dale's appearance was "rough," and his mood/affect "depressed and sad." Tr. 345. However, his cognitive performance has no discernible relevance in this matter because Mr. Dale does not allege cognitive impairments.

Additionally, the ALJ erred in finding Dr. Sanchez did not report functional limitations and failed to explain her findings. The doctor noted Mr. Dale would "miss details, not manage stress, not get along well or keep up with others," based on notes and observations Mr. Dale was "profoundly depressed," looked thin, did not bathe, sleep, or eat regularly, had violated a no contact order, had a history of DV and was recently in jail, gave up easily on serial sevens, had limited insight and relatively poor judgment in his interactions with others, and was a "slow talker and slow at processing." Tr. 344-46. Additionally, because Dr. Sanchez supported her opinion with her own observations and did not question Mr. Dale's self-reports, the ALJ's rejection of the opinion on the basis that Dr. Sanchez relied on Mr. Dale's complaints was neither legally, nor factually sufficient. *See Ryan*, 528 F.3d at 1199-1200. Accordingly, the Court finds that if specific and legitimate reasons exist to discount Dr. Sanchez's opinion, the ALJ did not provide any, and thereby erred. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1988).

On remand, the ALJ shall reevaluate all three opinions.

**B.     The ALJ Erred at Step Two**

At step two of the five-step sequential evaluation process, the ALJ found Mr. Dale had severe, medically determinable impairments of major depressive disorder and general anxiety

REPORT AND RECOMMENDATION - 5

disorder. Tr. 21.  Mr. Dale contends the ALJ should have also found he had a severe, medically determinable impairment of personality disorder.  Dkt. 12 at 7.

At step two, the ALJ concluded that "[t]he personality disorder diagnosis occurred one-time and does not appear consistently throughout the record."  Tr. 21.  The conclusion is not supported by the record.  As Mr. Dale notes, after conducting a psychological/psychiatric evaluation in August 2010, Dr. Hellekson diagnosed personality disorder NOS.  Tr. 230, 232.  In November 2010, Walter Lovell, M.D. noted Mr. Dale's diagnosis of mixed personality disorder was unchanged from prior exams.  Tr. 317.  In March 2011, Psychiatric Evaluation Specialist Sarah Bostelle noted personality disorder NOS with narcissistic and antisocial features.  Tr. 324.  In November 2011, and on three separate occasions in February 2012, ARNP Thomas Walsh diagnosed mixed personality disorder.  Tr. 260, 262, 263, 325.  Finally, in April 2012, Dr. Sanchez diagnosed rule out dependent personality disorder after conducting a psychological/psychiatric evaluation.  Tr. 344.

At step two, Mr. Dale must make a threshold showing that (1) he has medically determinable impairments; and (2) his medically determinable impairments are severe or were severe for at least 12 continuous months.  *See Bowen v. Yuckert*, 482 U.S. 137, 145, (1987); §§ 404.1520(c), 416.920(c), 404.1505, 416.905.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Id*. (*citing Bowen*, 482 U.S. at 153-54).

The Court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), and may not substitute its "conclusions for the ALJ's, or

speculate as to the grounds for the ALJ's conclusions." *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). However, the Court may set aside the ALJ's decision if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Here, the ALJ's finding that Mr. Dale's personality disorder diagnosis occurred "one-time" was not supported by the record. Furthermore, though the ALJ discussed the opinions of Drs. Helleskon and Sanchez, those opinions were improperly rejected, and the ALJ completely ignored the other diagnoses of personality disorder in the record.[4] Accordingly, on the record before it, the Court cannot say the ALJ's step two finding was reasonable with respect to personality disorder. Nor can the Court conclude the ALJ's error was harmless. As Mr. Dale correctly observes, depressive and anxiety disorders differ in presentation from personality disorders. *See, e.g.*, 20 C.F.R., Part 404, Subpart P, App. 1, §§ 12.04, 12.06, 12.08; Dkt. 12 at 7. The Court thus recommends the ALJ reevaluate Mr. Dale's step two findings on remand.

**C.     The ALJ Did Not Err in Declining to Order a Consultative Evaluation**

Mr. Dale also argues the ALJ erred in failing to order a consultative evaluation ("CE"). Dkt. 12 at 4. Mr. Dale's argument is hardly a model of clarity, and the Court is unable to ascertain its parameters. As the Court understands it, Mr. Dale contends the record contains objective medical evidence of his mental health conditions but he was "unable to provide adequate evidence" about his impairments due to his history of homelessness and incarceration. Dkt. 12 at 4. It is not entirely clear what impairments Mr. Dale contends the ALJ missed: while

---

[4] Dr. Hellekson also stated Mr. Dale's personality disorder was "likely his primary disability, which has led to interpersonal problems at home with DV . . . and then his problems getting along with the guards in the jail." As the ALJ improperly rejected this opinion, the Court cannot conclude "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290.

REPORT AND RECOMMENDATION - 7

his argument mentions personality disorder and borderline intellectual functioning, it also refers generally to "mental health conditions." *Id.* During his hearing, Mr. Dale's representative noted only that no CE had been ordered, and then requested the ALJ "send Mr. Dale out for a consultative evaluation post hearing" if the ALJ was "not inclined to rule favorably." Tr. 38. Mr. Dale's representative did not identify a specific impairment for which he believed a CE was necessary, and the Court is not aware of any legal standard requiring an ALJ to order a CE when the ALJ is not inclined to rule in a claimant's favor.

Mr. Dale's argument is contrary to law. It is Mr. Dale's burden to prove he was disabled at steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). It was his duty to furnish medical or other competent evidence establishing disability. 20 C.F.R. § 404.1512. The duty to "conduct an appropriate inquiry" is only triggered where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Furthermore, an ALJ has "broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (*citing Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)).

In *Tonapetyan,* the ALJ relied heavily on the opinion of a medical expert who testified the record was "confusing," recommended that a more detailed report should be obtained, and that he might have a different opinion if the claimant's symptoms were clarified. *Tonapetyan*, 242 F.3d at 1150. The Ninth Circuit found these circumstances compelled the ALJ to further develop the record, and held an ALJ commits reversible error in relying on a witness who equivocates, expresses concern over the completeness of the record, and recommends an

additional report be obtained. *Id.* at 1151. In contrast, here, evidence of mental health impairments beyond depression, anxiety, and personality disorder may have been sparse, but neither ambiguous nor inadequate. Accordingly, the duty to "conduct an appropriate inquiry" was not necessarily triggered. Additionally, as even Mr. Dale cannot characterize what impairments the ALJ would have found had she developed the record, there is no reason to expect the ALJ could have. Under these circumstances, no further duty was required of the ALJ in determining whether Mr. Dale had other mental health impairments.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Drs. Hellekson, Cavenee, and Sanchez; reevaluate Mr. Dale's impairments at step two; and as necessary, develop the record and proceed with steps three through five of the five-step evaluation process.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **September 2, 2015**. If no objections are filed, the Clerk shall note the matter for **September 3, 2015** as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

//

//

REPORT AND RECOMMENDATION - 9

DATED this 19th day of August, 2015.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10